1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10   TRAY WESLEY SIMMERMAN,                    Civil No.    09cv01044-BEN (BGS)

11                              Plaintiff,

12          v.                                 **REPORT AND RECOMMENDATION
                                               TO DENY PLAINTIFF'S MOTION FOR
13                                             SUMMARY JUDGMENT AND GRANT
     MICHAEL J. ASTRUE, Commissioner of        DEFENDANT'S CROSS-MOTION FOR
14                                             SUMMARY JUDGMENT**
     Social Security,
15
                               Defendant.
16

17

18                            **I.  INTRODUCTION**

19          Plaintiff Tray Wesley Simmerman filed a complaint pursuant to the Social Security Act (the

20   "Act"), 42 U.S.C. § 405(g),[1] on May 13, 2009, challenging the denial of disability benefits by the

21   Commissioner of the Social Security Administration ("Commissioner")**.** (Doc. No. 1) On March 17,

22   2010, the Commissioner filed an answer to Plaintiff's complaint. (Doc. No. 12.) On June 21, 2010,

23   Plaintiff filed a motion for summary judgment, requesting that the Court reverse the Administrative

24   _____

25          [1]  42 U.S.C. § 405(g) provides:

26          Any individual, after any final decision of the Commissioner of Social Security made
            after a hearing to which he was a party . . . may obtain a review of such decision by a
            civil action ... brought in the district court of the United States. . . .  The court shall have
27          power to enter, upon the pleadings and transcript of the record, a judgment affirming,
            modifying or reversing the decision of the Commissioner of Social Security, with or
28          without remanding the cause for a rehearing.  The findings of the Commissioner . . . as
            to any fact, if supported by substantial evidence, shall be conclusive.

1   Law Judge's ("ALJ") decision and remand for payment of benefits, or, in the alternative, reverse and

2   remand for further proceedings.[2] (Doc. No. 20.) On July 14, 2010, the Commissioner filed his cross-

3   motion for summary judgment and opposition to Plaintiff's motion for summary judgment,

4   requesting that the ALJ's decision be affirmed. (Doc. Nos. 21-22.) Plaintiff has failed to file a reply

5   to the Commissioner's opposition, oppose the Commissioner's cross-motion, or request an

6   extension.

7       Pursuant to Civ. L.R. 7.1(d)(1), the Court, in its discretion, finds the parties' cross-motions

8   for summary judgment can be decided on the papers and without oral argument and proceeds

9   without the benefit of Plaintiff's reply or opposition. After careful consideration of the papers, the

10  administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for

11  summary judgment be **DENIED**, and the Commissioner's cross-motion for summary judgment be

12  **GRANTED**.

13                                  **II.  PROCEDURAL HISTORY**

14      Plaintiff applied for Supplemental Security Income ("SSI") and disability insurance benefits

15  pursuant to the Act on February 6, 2006, alleging that he was disabled since February 6, 2004.

16  (Administrative Record "AR" at 92-100.) Plaintiff's application was denied on May 17, 2006, and

17  again upon reconsideration on February 23, 2007. (AR at 44-47.) On April 27, 2007, the Social

18  Security Administration (SSA) received Plaintiff's request for a hearing before an ALJ. (AR at 63.)

19      Plaintiff appeared and testified at the hearing held on June 9, 2008, in San Diego, CA. He

20  was represented by his attorney Harold O. McNeil. (AR at 19-43.) An impartial vocational expert,

21  Nelly Katsall, also appeared and testified at the hearing. (AR at 19-43.) In his decision dated July

22  25, 2008, ALJ Leland H. Spencer concluded that Plaintiff was not disabled within the meaning of

23  the Act, and was therefore not eligible for SSI or disability insurance benefits. (AR at 9-18.) Plaintiff

24  ───────────────────

25      [2]On June 10, 2010, Plaintiff filed a motion for extension of time to file his motion for summary
    judgement due to his attorney, Thomas G. Roche, having taken over another practitioner's caseload.
26  (Doc. No. 18.) Plaintiff's request for an extension came almost a month after the court ordered deadline
    for the motion for summary judgement, which was to be filed on or before May 17, 2010. (Doc. No. 16.)
27  The Court found that a heavy caseload is not good cause for failure to comply with Court ordered
    deadlines and noted Mr. Roche's prior sanctions for failing to follow the Court's scheduling orders. (*Id.*)
28  However, despite Mr. Roche's inexcusable conduct, the Court granted Plaintiff's motion to extend in
    the interest of justice to his client. (*Id.*)

09cv01044

1  requested administrative review, but the Appeals Council declined, making the ALJ's decision the

2  Commissioner's final decision. (AR at 1-3.)

3                                   **III.  FACTUAL BACKGROUND**

4  **A.  Plaintiff's Testimony at the Administrative Hearing**

5              At the hearing on June 9, 2008, Plaintiff testified he was born April 23, 1963. (AR at 21-22.)

6  He attended high school through the tenth grade, held various short-term mechanical jobs from 1981

7  through 1987, and held a longer term job pumping gas at Texaco for approximately three years. (AR

8  at 33, 128-135.) Plaintiff testified that he was unable to perform assembly line jobs because he could

9  not do "the soldering and assembly." (AR at 32.) In approximately 2003 or 2004, he worked for

10 Wal-Mart, but was let go because he was unable to perform cashier duties. (AR at 23.) In 2004 he

11 worked as a gas station attendant for approximately four to five months, but was fired because of

12 transportation problems, "getting up late," and "lack of income" at the station. (AR at 25-27.)

13 Plaintiff claims that he was let go from "every job" because he "couldn't really do [it]." (AR at 33.)

14 At the time of the hearing, Plaintiff indicated that he was living with his parents and that he could

15 work, but had stopped looking because of his depression. (AR at 28-30.) He testified that his

16 depression, diabetes, and Hepatitis B–which make him "tired all the time"–stop him from working.

17 (AR at 31.) He is embarrassed that he cannot read or write. (AR at 22, 28.) Further, his memory is

18 deteriorating and his depression is enhanced by being unable to see his four children. (AR at 34, 36.)

19 With medication and proper medical treatment, Plaintiff said he would "probably" try to go out and

20 do simple jobs. (AR at 37.)

21 **B. Expert Testimony at the Administrative Hearing**

22             On June 9, 2008, Nelly Katsell, an impartial vocational expert, also testified before the ALJ.

23 (AR at 40.) Katsell, basing her opinion on Plaintiff's work as a gas station attendant, testified that

24 the skills and exertion range of a gas station attendant are "SVP three, semi-skilled, and exertion

25 level medium." (AR at 41.) Katsall further testified that the hypothetical person having "a mental

26 impairment that moderately was to limit his capacity to engage in daily living activities; social

27 functioning; concentration for prolonged periods as to simple, repetitive tasks; capacity to tolerate

28 normal work stress; [and] capacity to maintain a daily and weekly schedule" would be able to

1  perform simple, repetitive one/two-step unskilled work in the national economy. (AR at 41.)

2  However, a person having "more than moderate limitations with respect to concentration" would not

3  be able to perform such tasks. (AR at 42.)

4  **C. Medical Evidence Presented**

5      **1.  Sandra M. Eriks, M.D., 01/22/2006**

6          On January 22, 2006, at the request of the California Department of Social Services,

7  Disability and Adult Programs Division, Dr. Eriks of Seagate Medical Group provided a summary

8  report of the Internal Medicine Evaluation of Plaintiff that she performed at Seagate Medical. (AR at

9  197.) In the report, Dr. Eriks stated that Plaintiff complains of pain throughout his entire body and

10  relieves this pain by using crystal methamphetamine. (*Id.*) His daily activities included living with

11  his parents, and doing much of his own cooking, cleaning, shopping, and driving. (*Id.*) Plaintiff had

12  a nine-year history of non-insulin-dependent diabetes mellitus and rarely checked his home glucose

13  values. (*Id.*) During his examination with Dr. Eriks, Plaintiff admitted he was currently using crystal

14  methamphetamine and smoked one pack of cigarettes per day. (AR at 198.) He denied drinking

15  alcoholic beverages. (*Id.*) For his mental status, Dr. Eriks noted, "Claimant is oriented to person,

16  place and time. He responds in an appropriate manner. Mood is appropriate. Memory is grossly

17  intact." (AR at 199.) Based on her examination, she found Plaintiff to have "no restrictions in areas

18  of lifting, carrying, standing, walking, or sitting. No special limitations in standing, walking or

19  sitting. No postural, manipulative, visual, communicative or environmental limitations." (AR at

20  200.)

21      **2.  C. Valette, Ph.D, 04/19/2006**

22          At the request of the Department of Social Services, Disability Evaluation Department, Dr.

23  Valette, of Valette & Associates, prepared her first psychological consultive examination report on

24  April 19, 2006. (AR at 166.) During the examination, Plaintiff claimed that he had a learning

25  disability and, as a child, was diagnosed with ADD and prescribed Ritalin. (*Id.*) Dr. Valette also

26  reported that Plaintiff lived with his parents most of his life and attended school through the tenth

27  grade, where he had attended special education classes due to a learning disorder. (AR at 167.)

28  Plaintiff claimed his last methamphetamine use was a year prior to the examination. (*Id.*) She

reported that Plaintiff had a juvenile disciplinary history, had been incarcerated approximately five times for being under the influence of drugs. (AR at 167.) He had four children that lived with their respective mothers. (AR at 166.)

Dr. Valette further reported that Plaintiff was fashionably dressed and groomed, was pleasant and cooperative, and that his thought process was organized, his speech normal, and his mood appropriate.  (AR at 167.) During the examination, Plaintiff reported that he could not handle his own funds, but was able to use public transportation independently, could take care of chores himself, and enjoyed working with computers, riding his bike, hanging out with friends, and watching TV. (AR at 168.)

During his Folstein Mental Status Examination, he achieved a "valid" score of 24 out of 30, as he could read a sentence and follow simple instructions, although he could not spell "world" backwards or count backwards from one hundred by sevens. (*Id.*) The Wechsler Adult Intelligence Scale, Third Edition, found Plaintiff had a Verbal IQ of 84, a Performance IQ of 83, and a Full Scale IX of 82. (AR at 169.) Dr. Valette reported, "These scores may be slightly deflated due to a Learning Disorder. He presents as though he is intellectually functioning in the average range." (*Id.*) His Wechler Memory Scale scores were valid and his Wide Range Achievement Test scores were valid and indicated a Learning Disorder. (*Id.*) Dr Valette's conclusions were as follows:

Diagnostic Impression: Given test results and clinical data, it is estimated that the claimant is intellectually functioning in the average range. His memory is functioning in the low average to average range. A Learning Disorder, [Not Otherwise Specified]. Methamphetamine abuse in remission, as per history. The claimant's history indicates Antisocial Personality Disorder.

Medical Source Statement: There are no mental restrictions regarding this claimant. He is capable of handling his own finances. It would be best for this claimant to obtain a job that did not involve read[ing] and writing as those are his areas of weakness.

(*Id.*)

**3. K. J. Loomis, D.O., 05/17/2006**

K. J. Loomis is a state psychiatric consultant who did not have the opportunity to review all the medical evidence, examine the Plaintiff, or listen to his sworn testimony. (AR at 17.) In a

Psychiatric Review Technique Form, under "Consultant's Notes," Dr. Loomis reported:

> Reviewed. Psych CE finds no significant impairment. This is well supported by MSE, Psych Testing and ADLs. The claimant shops, manages money, does chores, cooks, interacts with others and cares for self. Impairment is non severe.

(AR at 183.)

**4. C. Valette, Ph.D, 02/14/2007**

At the request of the Department of Social Services, Plaintiff had another psychological evaluation with Dr. Valette. (AR at 204.) Plaintiff complained he had out of control diabetes, depression, and a learning disorder. (*Id.*) Plaintiff claimed that he had done odd jobs, such as mowing lawns, and in 2003 worked for one year pumping gas until he was fired because of slow business. (AR at 205.) Plaintiff reported that his methamphetamine abuse was in remission for two years, he had no history of juvenile disciplinary problems, and had been incarcerated approximately four times for drug-related crimes. (*Id.*) Despite his reports of depression, Dr. Valette wrote, "there were no symptoms observed today in order to make this diagnosis." (*Id.*) Plaintiff reported that he cared for his parents on a daily basis and was able to do regular chores, utilize public transportation independently, and handle his own finances. (AR at 206.) Dr. Valette concluded:

> <u>Medical Source Statement:</u> There are no mental restrictions regarding this claimant. He is capable of handling his own finances.
>
> The above information is based on: test scores, interaction with this evaluator, and background information.

(*Id.*)

**5. H. Douglas Engelhorn, M.D., 07/03/2008**

At the request of the Department of Social Services, Dr. Engelhorn saw Plaintiff for a psychiatric consultation. (AR at 239.) Dr. Engelhorn reviewed Dr. Valette's psychological evaluations, test scores, and a drug report, which was "difficult to read" but "possibly indicated that patient was testing positive for marijuana and amphetamines." (*Id.*) Dr. Engelhorn reported that Plaintiff, "apparently has always been very dependent upon his parents and, even as an adult, needs considerable supervision, care and direction." (*Id.*) During the consultation, Plaintiff stated that he

1  was a problem child who was probably diagnosed with ADHD and was always in special education

2  classes because of his significant learning disabilities. (*Id.*) Dr. Engelhorn reported that Plaintiff

3  "continues to struggle with both reading and writing" and that his mother had to fill out his

4  information form. (AR at 239-40.) He reported that Plaintiff has a history of drug and alcohol abuse

5  and may stop using amphetamines for years at a time, but has a tendency to restart his use. (AR at

6  240.) At the time of the consultation, Plaintiff reported having one and a half years of sobriety. (*Id.*)

7  Plaintiff also told Dr. Engelhorn that the last time he had worked was at a gas station in

8  approximately 2000. (*Id.*) Plaintiff stated that he had not worked since because he had never been

9  "called back," despite having interviews and filling out applications. (*Id.*)

10       Dr. Engelhorn found his medical history to reveal a variety of physical health problems,

11  including non-insulin dependent diabetes, essential hypertension, hepatitis B, and high blood

12  cholesterol levels. (*Id.*) Plaintiff described steady levels of low-grade chronic depression going back

13  at least 10 years, hyperactivity, and difficulty with memory, concentration, focus, and task

14  completion. (AR at 241.) Dr. Engelhorn reported that he needs "considerable assistance, direction,

15  support and structure from his parents" and "gives a history of being emotionally unstable and

16  ineffectual all of his life," although "fully capable of taking care of his basic needs." (*Id.*) Plaintiff

17  stated that he does not do household chores, does not use public transportation, and does not read

18  because of his undeveloped reading skills. (*Id.*)

19       His mental status examination revealed "an alert, cooperative, white male... adequately

20  dressed and groomed" probably of "low/average intelligence or borderline intellectual functioning."

21  (*Id.*) He came across as being "somewhat childlike," at times making "very poor eye contact" and

22  being distracted, although his thinking seemed to be "logical" and there was no evidence of active

23  depression, nor was he "noted to be hyperactive." (*Id.*) Dr. Engelhorn found there "appears to be

24  considerable cognitive impairment," with concentration and attention impaired "as judged by his

25  inability to perform serial sevens." (AR at 242-3.) Dr. Engelhorn concluded that he was not

26  successful in maintaining employment, having "not worked at all since about 2000," that his

27  amphetamine abuse apparently gave him easing of his ADHD symptoms, and that his "daily

28  activities appear to be rather minimal." (*Id.*) Dr. Engelhorn found "considerable cognitive

impairment," significant undereducation, and "major problems in the areas of reading and writing." (AR at 243.) He reported that Plaintiff will have "significant difficulties performing even simple, repetitive tasks," greater difficulty "performing complex and detailed work," and major impairment in terms of his "ability to relate to peers and supervisors in the workplace." (*Id.*) Dr. Engelhorn reported that "he might possibly be capable of making routine adjustments in the workplace," although "this is a case where there is significant psychiatric disability that would prevent regular, steady periods of employment." (*Id.*) His diagnostic impressions included: ADHD (combined type), a learning disorder not otherwise specified, dysthymia, and amphetamine abuse (apparently in full remission). (AR at 242.)

Attached to his report, Dr. Engelhorn's "Medical Source Statement of Ability to Do Work Related Activities (Mental)," found that Plaintiff had marked to extreme restrictions in his ability to remember and understand complex instructions, respond appropriately to usual work situations, and make changes in routine work settings. (AR at 244-5.) Dr. Engelhorn also found that Plaintiff had moderate to marked restrictions in his ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple and complex work-related decisions. (*Id.*) Plaintiff was found to have a marked restriction in his ability to interact appropriately with the public, supervisors, and co-workers. (AR at 245.)

**D. ALJ's Findings**

The Social Security regulations set forth a five-step sequential evaluation process for determining whether a claimant has established his eligibility for benefits. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). If not, the ALJ then must determine whether the claimant's impairments are "severe" within the meaning of the regulations. *See* 20 C.F.R. § 404.1520(c). If the impairments are "severe," then the ALJ must compare the claimant's impairments to the impairments listed in the "Listing of Impairments" set forth in Appendix 1 to 20 C.F.R. § 404. *See* 20 C.F.R. § 404.1520(d). If any "severe" impairment equals a listed impairment, the claimant must be found to be disabled. (*Id.*) However, if a "severe" impairment does not equal a listed impairment, the ALJ must determine the claimant's residual functional capacity. *See* 20 C.F.R. § 404.1520(e). If

the claimant retains the capacity to perform his or her past relevant work, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(f). If the ALJ determines that the claimant can no longer perform past relevant work, the ALJ must consider whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(g). If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled. *Id.*; *see also Batson v. Commissioner of Social Security Administration,* 359 F.3d 1190, 1193-1194 (9th Cir. 2004).

Following the hearing, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2004. (AR at 11.) The ALJ found that Plaintiff did have severe impairments, including attention deficit hyperactive disorder, a learning disorder not otherwise specified, dysthymia, and a history of amphetamine abuse. (AR at 11-12.) However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the impairments in 20 C.F.R. § 404, Subpt. P, App. 1. (AR at 12.) Under 20 C.F.R. § 404.1520, and § 12.02 (B) of Subpt. P, App. 1, the ALJ found that Plaintiff did not have a marked restriction or limitation and had only moderate difficulties or restriction in the following areas: activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (AR at 13.) The ALJ found that Plaintiff had not experienced episodes of decompensation under "paragraph B," and that the evidence failed to establish the presence of "paragraph C" criteria or the criteria of § 12.04 or § 12.09. (*Id.*) In making these findings, the ALJ relied, at least in part, on the medical reports by Doctors Valette and Englehorn.

The ALJ also found that Plaintiff had the residual functional capacity to perform a range of "all exertional work except he has moderate limitations in activities of daily living, social functioning, and his capacity to concentrate and tolerate normal stress, and his capacity to maintain a daily and weekly schedule." (AR at 15.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment..." (*Id.*) Relying on Dr. Valette's findings that Plaintiff's speech was normal, his mood appropriate, his recall good, and his thought process organized, and Dr. Englehorn's findings that

Plaintiff was alert, well dressed, logical, clear, and oriented, the ALJ found that Plaintiff's complaints were not "fully substantiated by the objective medical conclusions and his symptoms may not have been as limiting as the claimant has alleged in connection with his application." (*Id.*) The ALJ found Plaintiff's credibility to be seriously impacted, considering Dr. Valette reported on April 19, 2006, that Plaintiff last used amphetamines a year prior, while Plaintiff's laboratory tests from February 17, 2006, were positive for methamphetamine, marijuana, and alcohol. (*Id.*)

The ALJ found that Dr. Engelhorn's findings directly contrasted Plaintiff's work history, which showed that he was capable of holding down full time work. (AR at 17.) The ALJ found that Plaintiff's history of maintaining full time employment "reflects his ability to work despite his life long conditions..." (AR at 16.) The ALJ noted that Plaintiff earned $5,674.13 in 2004, $18,862.43 in 2002, $20,196.66 in 2001, and $15,576.60 in 2000. (*Id.*) Further, the "performance of the claimant's daily activities as described is not inconsistent with the performance of many basic work activities." (AR at 16.) The ALJ also found Dr. Engelhorn's opinion to be impeached because Plaintiff had falsely informed Dr. Engelhorn that he had not worked since 2000, when he told Dr. Valette that he had worked as recent as 2005. (AR at 17.) The ALJ found that Plaintiff had previously testified about "periods of employment that were not informed of to the doctor," and "appeared to embellish his impairments." (*Id.*) The ALJ found that the doctor took into account Plaintiff's embellishments and false employment information in forming his opinion. (*Id.*)

The ALJ assigned significant weight to Dr. Eriks's conclusion that Plaintiff had no physical restrictions and Dr. Valette's conclusion that Plaintiff was found to have no mental restrictions. (AR at 16-17.) The ALJ found them both to be "well-supported by the medical evidence, including the claimant's medical history and clinical and objective signs and findings as well as detailed treatment notes, which provides a reasonable basis for claimant's chronic symptoms and resulting limitations." (AR at 17.)

Because of his "thorough review of the evidence and familiarity with Social Security Rules and Regulations," the ALJ also considered Dr. Loomis' finding that Plaintiff did not have a severe mental impairment. (AR at 17.) In considering the opinion of Dr. Loomis, however, the ALJ took

- 10 -

1   into consideration that "this doctor did not have the opportunity to review [] the additional medical

2   evidence submitted after the evaluations or to listen to the sworn testimony of the claimant or to

3   observe the claimant's demeanor." (*Id.*)

4        The ALJ concluded that Plaintiff had "some limitations due to his mental impairments," but

5   was capable of performing past relevant work as a gas station attendant, which did not require the

6   performance of work-related activities precluded by his residual functional capacity. (AR at 16-17.)

7   Accordingly, Plaintiff was found not to have been under a disability, as defined in the Act, from July

8   1, 2004 through July 25, 2008, the date of the decision. (AR at 18.)

9                           **IV. LEGAL STANDARD**

10        The scope of judicial review is limited. The Commissioner's decision must be affirmed if he

11   applied the correct legal standards if his decision was supported by "substantial evidence." *Batson v.*

12   *Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Connett v.*

13   *Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003).  "Substantial evidence" is "more than a mere scintilla

14   but not necessarily a preponderance."  *Connett*, 340 F.3d at 873. It is "relevant evidence that,

15   considering the entire record, a reasonable person might accept as adequate to support a conclusion."

16   *Id*. (citation omitted); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.

17   2003) (finding substantial evidence in the record despite ALJ's failure to discuss every piece of

18   evidence). Under this standard, the Commissioner's findings are upheld if supported by inferences

19   reasonably drawn from the record. *See Gallant v. Heckler*, 753 F.2d 1450, 1452-1453 (9th Cir.

20   1984). If evidence exists to support more than one rational interpretation, the Court must defer to the

21   Commissioner's decision.  *See Morgan v. Commissioner,* 169 F.3d 595, 599 (9th Cir. 1999). This

22   includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.

23   *See Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).

24                             **V. DISCUSSION**

25        Plaintiff argues that he is entitled to summary judgment because the ALJ improperly

26   discounted the opinion of Dr. Engelhorn. When presented with conflicting medical opinions, it is up

27   to the ALJ to "determine credibility and resolve the conflict." *Batson*, 359 F.3d at 1195 (internal

28

09cv01044

1   citation omitted). The Court agrees with Defendant's position and finds the ALJ's discounting of Dr.

2   Engelhorn's opinion was supported by substantial evidence and not based on legal error.

3          The ALJ properly compared the opinion of Dr. Engelhorn with the record as a whole. *See* 20

4   C.F.R. §404.1527(d)(4) (the more consistent an opinion is with the record as a whole, the more

5   weight is given to that opinion). Considering the entire record, the ALJ found that Plaintiff's

6   "medically determinable impairments could reasonably be expected to produce the alleged

7   symptoms;" however, the ALJ ultimately found Plaintiff's "statements concerning intensity,

8   persistence, and limiting effects" were not credible. (AR at 15.) While Dr. Engelhorn concluded that

9   Plaintiff had a "significant psychiatric disability that would prevent regular, steady periods of

10  employment," it was proper for the ALJ to give this opinion less weight since there was substantial

11  evidence showing that the opinion was inconsistent with the record as a whole. Most importantly, it

12  was at odds with Dr. Valette's 2006 report finding that Plaintiff had "no mental restrictions" and

13  should "obtain a job that [does] not involve read[ing] and writing as those are his areas of

14  weakness," and her 2007 report, again finding "no mental restrictions." (AR at 169.)

15         When physicians' medical opinions are offered as evidence, the Ninth Circuit distinguishes

16  among three types of physicians and gives varying weight to their opinions. *Lester v. Chater*, 81

17  F.3d 821, 830 (9th Cir. 1995). The three types of physicians are the following:  (1) those who treat

18  the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining

19  physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).

20  *Id.*  The opinion of a treating physician receives greater weight than that of a nontreating physician,

21  and greater weight is accorded to the opinion of an examining physician than a nonexamining

22  physician. *Id.*

23         While there is extensive case law on how to address conflicting opinions between different

24  types of physicians, this case presents a situation where the differing opinions are of two

25  consultative physicians who both examined, but did not treat the claimant. The parties have not

26  offered, nor has the Court found, any case law regarding the standard to apply in this situation.

27  However, where an ALJ rejects the testimony of an examining physician in favor of a nonexamining

28

physician, he must give "specific, legitimate reasons for doing so, and those reasons [must be] supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). Since giving specific legitimate reasons is sufficient to favor a nonexamining physician's opinion over a more heavily weighted examining physician's opinion, when an ALJ favors one physician's opinion over another physician of the same type by propounding specific legitimate reasons supported by substantial evidence, he has surely met the necessary threshold. Here, a review of the record shows that the ALJ properly analyzed the evidence and gave specific and legitimate reasons for giving more weight to the opinion of Dr. Valette than that of Dr. Engelhorn.[3] Specifically, the ALJ reasoned that Dr. Engelhorn's opinion was at odds with the objective evidence, took into account misinformation provided by Plaintiff, and was based on Plaintiff's embellishment of his symptoms.

The ALJ evaluated the objective evidence, which was the medical signs reported by Doctors Valette and Engelhorn, including medical psychiatric signs such as abnormalities of behavior, mood, thought, memory, orientation, development, or perceptions. *See* 20 C.F.R § 404.1528(b), 20 C.F.R. § 404.1529(a). (AR at 14). The ALJ found that the evidence from both doctors' reports suggested that Plaintiff was able to care for himself and maintain his home, and that his daily activities were "not inconsistent with the performance of many basic work activities." (AR at 16.) The ALJ concluded that "the record fails to document any objective clinical findings establishing that the claimant was not able to perform work in light of the reports... and findings made on examination." (AR at 15.)

The ALJ also found that the Dr. Engelhorn's opinion was in direct contrast with Plaintiff's work history. (AR at 17.) The ALJ pointed out that Plaintiff "has a history of holding down and maintaining full time employment [which] reflects his ability to work despite his life long conditions

_____

[3]It is worth noting that the ALJ did not completely reject Dr. Engelhorn's opinion. While Dr. Engelhorn found Plaintiff to have "extremely severe mental impairments," Dr. Loomis found that Plaintiff did not have a severe mental impairment and Dr. Valette found Plaintiff had "no mental restrictions." (AR at 245, 169, 206, 183.) In contrast to Dr. Valette's opinion, the ALJ found that Plaintiff did "have some limitations due to his mental impairment," although "less severe" than those described by Dr. Engelhorn. (AR 16, 17.) Essentially, the ALJ considered all opinions and came down somewhere in between in making his credibility finding on Plaintiff's "statements concerning intensity, persistence, and limiting effects," and found that Plaintiff had "moderate limitations" but retained the ability to perform past relevant work. (AR 14, 15.)

09cv01044

1    of ADHD, learning disorder, and substance abuse..." (AR at 16.) Dr. Valette reported that

2    approximately two years prior to her April 2006 report, Plaintiff had worked for a year at a Chevron

3    gas station, but was fired because "he did not show up due to transportation problems." (AR at 167.)

4    Dr. Engelhorn, on the other hand, reported that Plaintiff had "attempted to work at gas stations,

5    although this type of employment has never lasted more than two months in duration." (AR at 240.)

6    Plaintiff told Dr. Engelhorn that he "last worked in a gas station in about 2000 and has not worked

7    since that time."[4] (*Id.*) The ALJ found that Dr. Engelhorn's opinion was impeached because he took

8    this misinformation regarding Plaintiff's work history into consideration when forming his opinion.

9    (*Id.*)

10           Plaintiff argues that there is no indication that Dr. Engelhorn formed his opinion by taking

11   into account Plaintiff's lack of work since 2000, and argues that instead, Dr. Engelhorn's opinion

12   was based solely on his mental examination of the plaintiff. (Doc. No. 20 at 6.) This, however, is

13   controverted by Dr. Engelhorn's finding that Plaintiff's employment history was "essentially without

14   much substance," which was based on the false assumption that Plaintiff had not had recently

15   worked for any significant amount of time. (AR at 240.) The ALJ could logically infer that if Dr.

16   Engelhorn had known that Plaintiff had recently held a year-long job, he may not have concluded

17   that Plaintiff's disability prevents "regular, steady periods of employment." (AR at 243); *see Sample*

18   *v. Schweiker* 694 F.2d 639, 642 (9th Cir. 1982) (ALJ entitled to draw inferences logically flowing

19   from the evidence). The ALJ reasonably discounted Dr. Engelhorn's opinion as misinformed.

20           The ALJ also found that Plaintiff "appeared to embellish his impairments" during his

21   consultation with Dr. Engelhorn. (AR at 17.) Although the ALJ did not specify each embellishment,

22   they are clear from the record. *See Andrews v. Shalala* 53 F.3d 1035, 1039 (9th Cir. 1995) (The court

23   may look at the "administrative record as a whole" and balance the evidence of disability against

24   evidence of non-disability.). Plaintiff told Dr. Valette that he had recently worked, was able to take

25

26           ───────────────

27           [4]Other information in the record also shows that Plaintiff was not forthcoming with Dr.
     Engelhorn about his work history. On February 26, 2006, Plaintiff provided statements to the SSA,
     which were recorded and electronically stored with his application. (AR at 95.) On the application, he
28   listed his longest period of work as a full-time shipping and receiving job at a warehouse from 2000 to
     2002. (AR at 106.)

09cv1044

care of chores himself, and was able to use public transportation independently. (AR at 168.)

Plaintiff told Dr. Eriks that he independently utilized public transportation, did much of his own

cooking and cleaning, and cared for his ailing parents on a daily basis. (AR at 197.) Plaintiff told the

ALJ that he had "took the bus, but it costs money," and instead rides his bike "probably every couple

of days" for transportation and exercise. (AR at 29-30.) In contrast, Plaintiff told Dr. Engelhorn that

he "does not do any household chores such as cooking, cleaning, or laundry," and that he "does not

use public transportation and depends on his parents to provide transportation services." (AR at

241.) Dr. Engelhorn surmised that Plaintiff "apparently... needs considerable supervision, care and

direction" from his parents. (AR at 239.) Even though Plaintiff's consultation with Dr. Engelhorn

was most recent (approximately one month after Plaintiff's testimony to the ALJ, sixteen months

after Dr. Valette's second consultation, two years after Dr. Valette's first consultation, and two and

one-half years after Dr. Eriks examination), the ALJ could reasonably reject the notion that

Plaintiff's condition had so rapidly deteriorated to the point that his ailing parents–who were both

disabled as of his June 9, 2008, testimony to the ALJ– were instead required to care for him. (AR at

35.) A more reasonable inference would be that Plaintiff took his last consultative examination as an

opportunity to embellished his symptoms. *See Bray v. Commissioner of Social Security Admin.* 554

F.3d 1219, 1228 (9th Cir. 2009) ("As the ALJ determined that Bray's description of her limitations

was not entirely credible, it is reasonable to discount a physician's prescription that was based on

those less than credible statements."). Plaintiff's inconsistent statements provide substantial

evidence for the ALJ to reasonably discount Dr. Engelhorn's assessment as based on inaccurate,

embellished symptoms.

Plaintiff's statements about his drug use provide additional evidence of his propensity to

embellish and mislead. The ALJ pointed out that while treatment notes dated February 2006 show

that Plaintiff tested positive for methamphetamine, marijuana, and alcohol, Dr. Valette reported that

Plaintiff last used methamphetamine a year prior to the April 2006 evaluation. (AR at 15, 166, 188,

226.) The ALJ found that Plaintiff's misleading statements about his drug use seriously impacted his

credibility. (AR at 15.) *See Light v. Social Sec. Admin,* 119 F.3d 789, 792 (9th Cir. 1997) (In

weighing the plaintiff's credibility, the ALJ may consider "inconsistencies either in his testimony or

between his testimony and his conduct."), *Smolen v. Charter,* 80 F.3d 1273, 1283-84 (an ALJ can consider inconsistent statements made by a claimant in evaluating credibility), *Gomez v. Astrue* 2009 WL 2390852 *7 (C.D.Cal., 2009).

It is also worth emphasizing that even if Dr. Engelhorn's opinion provided sufficient evidence for the ALJ to rationally conclude that Plaintiff was disabled, substantial evidence still exists to support the opposite conclusion. *See Rhinehart v. Finch,* 438 F.2d 920, 921 (9th Cir. 1971) ("All we can do is inquire whether the decision actually made is supported by substantial evidence. Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made."). Based on Plaintiff's credibility problems, the misinformation provided to Dr. Engelhorn, and other doctors' findings of less severe mental restrictions, the ALJ had specific and legitimate reasons for discounting Dr. Engelhorn's opinion and concluding that, under the Act, Plaintiff was not disabled.

Lastly, after arguing that the ALJ erred in discounting Dr. Engelhorn's opinion, Plaintiff's motion for summary judgement draws the Court's attention to a statement in the ALJ's decision: "Furthermore, the record documents that the claimant earned $5,674.13 in 2004, $18,862.43 in 2002, $20,196.66 in 2001, and $15,576.60 in 2000." (AR at 15.) During the administrative hearing, both the ALJ and Plaintiff's previous counsel, Mr. McNeil, made reference to Plaintiff's earnings record, but were unable to locate it. (AR at 23-4.) Plaintiff now states, "Whatever the ALJ used in coming up with these figures, it is outside the record in this case." (Doc. No. 20 at 6.) Although Plaintiff does not go on to argue that these figures prejudiced the ALJ against Dr. Engelhorn's opinion or otherwise improperly influenced the ALJ's ultimate decision, the Court will proceed on the assumption that Plaintiff intended to make the point. Like Plaintiff, the Court is unable to locate the earnings referenced by the ALJ in the administrative record. However, to the extent Plaintiff is arguing that the ALJ improperly relied on those figures, such argument is without merit. While the ALJ summarized these figures, he did not afford any special weight to them. *See Perkins v. Astrue*, 2010 WL 375117 *4 (C.D. Cal., 2010). In fact, the ALJ only noted the figures by themselves, said nothing more about them, and went on to reference the Plaintiff's history of holding down and

maintaining employment, which is supported by ample evidence in the record. Even assuming the ALJ erroneously assigned weight to Plaintiff's earnings, such error would be harmless. *See Curry v. Sullivan,* 925 F.2d 1127, 1131 (9th Cir.1991) (harmless error rules applies to review of administrative decisions regarding disability).  Ultimately, the ALJ relied upon testimony, reports, and opinions of medical experts, not Plaintiff's 2000 through 2004 earnings, in making his decision.

## V.  CONCLUSION AND RECOMMENDATION

Having reviewed the matter, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, and Defendant's Cross-Motion for Summary Judgment be **GRANTED**.  This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636 (b)(1).

**IT IS ORDERED** that no later than **November 3, 2010**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties within **10 days** of being served with the objections.

**IT IS SO ORDERED.**


DATED: October 20, 2010


**BERNARD G. SKOMAL**
United States Magistrate Judge


cc:        Hon. Roger T. Benitez
           all counsel, parties

- 17 -                                      09cv01044